UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROWN CHEVROLET,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GENERAL MOTORS, LLC, et al.,<br><br>　　　　Defendants. | Case No. 13-cv-01362-TEH<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

This matter came before the Court on January 13, 2014, on two motions to dismiss filed by two separate sets of Defendants. Having considered the arguments of the parties and the papers submitted, the Court now GRANTS Defendants' motions for the reasons set forth below and DISMISSES Plaintiff's complaint in its entirety.

**BACKGROUND**

The parties are already familiar with the facts of this case as described in the Court's July 23, 2013 Order. *See Groth-Hill Land Co., LLC v. Gen. Motors LLC*, No. C13-1362 TEH, 2013 WL 3853160, at *1-*4 (N.D. Cal. July 23, 2013). In brief, Plaintiff Crown Chevrolet ("Crown") alleges the following:

In order to consolidate the California General Motors automotive market into a single entity that it could control, non-party General Motors Corporation ("GM") [1] through its employees, Defendants Randy Parker and James Gentry, established a scheme to force GM franchisees, such as Crown, to sell their dealerships to non-party Inder Dosanjh and his company, non-party California Automotive Retailing Group ("CARG"). Second

---

[1] General Motors Corporation's assets were sold free and clear of liability to General Motors LLP. *Groth-Hill Land Co., LLC v. Gen. Motors LLC*, 2013 WL 3853160, at *1. As the distinction between the two entities is of no significance to the present matter, as neither entity continues to be a defendant in this case, both entities will be collectively referred to as "GM."

Amended Complaint ("SAC") ¶¶ 13, 14. In turn, Dosanjh and CARG would then permit GM to control the operations of the dealerships. *Id.* In order to force Crown to sell, GM employed the services of Defendant Ally Financial ("Ally"), Crown's "floorplan" dealer[2] and Ally's Director of Sales, Defendant Kevin Wrate ("Wrate") to extract money from Crown. SAC ¶ 16. Ally and Wrate were to threaten Crown that failure to comply with their various financial demands would cause Ally to withdraw its floorplan financing – which is the "life-blood of [a] dealership." SAC ¶¶ 16, 22, 23. After Ally financially weakened Crown, Defendant Parker, who was in charge of GM's franchise agreements, told Crown that in light of its financial situation Crown had no choice but to sell its dealership, and that the "only [buyer] who would be approved [by GM] for the transaction" would be Dosanjh. SAC ¶ 24.

Crown alleges – that with no real alternative – it agreed to sell. SAC ¶ 27. Although the sale was for less than the fair market cash value, Crown's owner, Pat Costello, entered into separate side agreements with Dosanjh, the benefits of which Crown believed would make up for the loss in cash sale price. SAC ¶ 26. Dosanjh and CARG, however, ultimately defaulted on the side agreements. SAC ¶¶ 42-47. Crown settled its claims with Dosanjh and CARG for less than it was owed, SAC ¶ 48, but now sues Ally, Wrate, Parker, and Gentry for their role in forcing the sale of the dealership for ultimately less than fair market value. Crown alleges that Defendants engaged in racketeering, in violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, and in unfair business practices, in violation of California's Unfair Competition Law, California Business and Professions Code Section 17200.

Defendants move to dismiss Crown's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. They argue that because Crown's claims accrued in late 2008 but it did not bring suit until 2013, the claims are barred by the applicable four-year statute

---

[2] A "floorplan" is a dealership's inventory financing. For example, when a dealer buys a vehicle from GM, Ally "floors" the vehicle by advancing the purchase price to GM. When the dealer sells the vehicle to a customer, it must repay the advance to Ally. *Groth-Hill Land Co., LLC,* 2013 WL 3853160, at *2.

of limitations. They also challenge the sufficiency of Crown's pleadings.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a complaint's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "[W]here the issue of limitations requires determination of when a claim begins to accrue, the complaint should be dismissed only if the evidence is so clear that there is no genuine factual issue and the determination can be made as a matter of law." *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 591 (9th Cir. 1990).

**DISCUSSION**

Civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). The limitations period "begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (internal quotation marks and citation omitted). Although Crown describes its injury as the forced sale of its dealership, it argues that at the time of sale – in September and October 2008 – there "was no reason for Crown to suspect that [Defendants] had entered into a racketeering scheme" and therefore the limitations period should not begin at the time of the sale. Pl.'s Opp'n at 10. Rather, Crown reasons that it was not until June 2009 – when Crown pursued fulfillment of the side agreements by Dosanjh and CARG and realized no such fulfillment

was forthcoming – that it recognized it was "injured." *Id.* at 11.  Therefore, Crown argues, the limitations period began only in June 2009, and thus it timely filed suit on February 25, 2013.

      Defendants contend that, at the latest, Crown should have known it was injured in November 2008, when Dosanjh and CARG first defaulted on the terms of the side agreements.  Crown responds that at the time of the initial default it believed Dosanjh and CARG were still planning to comply with the agreements, and that the breach was just temporary.  But in June 2009, Crown "drew a line in the sand and began to aggressively pursue fulfillment of the side agreements," and it was only then that "Crown discovered that Dosanjh had no intention of ever fulfilling the terms," and that it had been injured. Pl.'s Opp'n at 11.

      Although Crown may not have realized the full extent of the alleged racketeering scheme until June 2009, or perhaps even later, the law is clear that injury commences the limitations period, and "[t]he plaintiff need not discover that the injury is part of a pattern of racketeering for the period to begin to run." *Grimmett*, 75 F.3d at 510 (internal quotations omitted).  Under either scenario that Crown puts forth, Crown's RICO claim is barred.  If its injury is the alleged forced sale, SAC ¶ 67, then its claim accrued in October 2008.  If its injury is the breach of its side agreement with Dosanjh and CARG, SAC ¶ 68, then its claim accrued at the time of the first breach in November 2008.  That Crown believed Dosanjh's promises of future repayment and did not "aggressively pursue" fulfillment until June 2009, was at its own peril.  Accordingly, Crown's RICO claim is dismissed as barred by the statute of limitations.

      The statute of limitations for a violation of California's Unfair Competition Law ("UCL") is also four years.  Cal. Bus. & Prof. Code § 17209.  The time of UCL accrual is based on the accrual rule of the underlying cause of action.  *Aryeh v. Canon Bus. Solutions*, 55 Cal. 4th 1185, 1196 (2013).  As the underlying cause of action is a RICO violation, the accrual rule of injury discovery that applies to the RICO claim also applies to the UCL claim.  Based on the above discussion, Crown's UCL claim is therefore also time-barred.

4

1  Finding both of Crown's claims barred by the statute of limitations, the Court does not
2  consider Defendants' arguments regarding the sufficiency of Crown's pleadings.

**CONCLUSION**

For the reasons set forth above, Defendants' motions to dismiss are GRANTED and Plaintiff's complaint is DISMISSED.  Because Plaintiff has already had the opportunity to amend its complaint once to cure the statute of limitations deficiencies, but has failed to do so, the dismissal is with prejudice.  The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: 01/22/14                    _____
                                   THELTON E. HENDERSON
                                   United States District Judge